JUDGE SULLIVAN

ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

13 CV 4300

Safe Horizon Anti-Trafficking Program
50 Court Street, 8th Floor
Brooklyn, New York 11201
Telephone: (718) 943-8641
Facsimile: (718) 943-8653



*Attorneys for Plaintiff Idalmy Pichardo*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Idalmy Pichardo,** | : |
| Plaintiff, | : |
| | : |
| | : *Civil Action No.* |
| v. | : |
| | : **COMPLAINT FOR DAMAGES** |
| **Arturo Francisco and Expressway Parking Lot, Inc.,** | : |
| | : |
| Defendants. | : |

Plaintiff Idalmy Pichardo ("Plaintiff" or "Ms. Pichardo"), by and through her undersigned attorneys, with personal knowledge as to herself and her actions and otherwise on information and belief, hereby alleges as follows:

### I.    INTRODUCTION

1.    Human trafficking is a modern-day form of slavery, involving victims who are forced, defrauded, or coerced into labor exploitation. Trafficking in human beings is reaching epidemic proportions throughout the world, including in the United States. President Obama has called human trafficking "a debasement of our common humanity that tears at the social fabric of our communities, distorts markets, endangers public health, and fuels violence and organized

1

crime." Recognizing the countless human tragedies such practices inflict, Congress passed the Trafficking Victims Protection Reauthorization Act of 2003 (the "TVPRA"), establishing a private cause of action for victims of human trafficking to ensure both that victims can be made whole and that the perpetrators of this inhuman practice are deterred from committing such acts. This action is brought under the TVPRA and other state and federal laws to seek just compensation for a victim of human trafficking, Idalmy Pichardo.

2.     Defendant Arturo Francisco ("Defendant Francisco") lured Ms. Pichardo to the United States under false promises of marriage, employment in a secretarial position and the ability to stay legally in the United States. Her passport was taken from her en route to the United States and was never returned. Immediately upon leaving the Dominican Republic, Ms. Pichardo was subjected to inhumane treatment, threats, and abuse. Ms. Pichardo endured a twenty-two day journey from the Dominican Republic to the United States during which she was deprived of basic necessities including food and water, forced to walk for days through the desert and otherwise mistreated. Upon her arrival in New York, Defendant Francisco forced Ms. Pichardo to work long hours without pay and restricted Ms. Pichardo's freedom. Using threats of arrest, imprisonment by legal authorities, and retribution against her and her family in the Dominican Republic should Ms. Pichardo try to leave, Defendant Francisco coerced Ms. Pichardo to work under miserable conditions without pay in satisfaction of a debt for the cost of transporting her to the United States. Defendant Francisco capitalized on Ms. Pichardo's undocumented immigration status while residing in the United States (which Defendant Francisco engineered) and her unfamiliarity with the United States and its laws mandating fair wages and basic human rights.

3.     Plaintiff brings this civil action under the TVPRA, the New York Labor Law ("NYLL") and state common law. By this complaint, Plaintiff seeks redress for egregious violations of her basic human and civil rights.

## II.      JURISDICTION

4.      Jurisdiction of the subject matter of this action is established under 28 U.S.C. Section 1331 and the TVPRA, 18 U.S.C. Section 1589 *et. seq.*

5.      This Court has supplemental jurisdiction over the related state law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction over those claims exists because they arise from the same common nucleus of operative facts from which the federal claims arise.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this district, and because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## III.      PARTIES

7.      Plaintiff Idalmy Pichardo is, and at all relevant times was, a citizen of the Dominican Republic who has resided in Bronx County, New York since her arrival in the United States.

8.      Upon information and belief Defendant Arturo Francisco is, and at all relevant times was, a citizen of the Dominican Republic who resides in Bronx County, New York. Defendant Francisco employed Plaintiff in his parking lot business Defendant Expressway Parking Lot, Inc. ("Defendant Expressway Parking") from on or about February 23, 2010 until on or about July 29, 2010. Upon information and belief at all times relevant herein, Defendant Francisco was an employer pursuant to the New York Labor Law.

9.      Defendant Expressway Parking is a corporation incorporated in the State of New York. Expressway Parking operates a parking garage business at 930 Faile Street, Bronx, New York. Upon information and belief at all times relevant herein, Defendant Expressway Parking was an employer pursuant to the New York Labor Law.

## IV.        FACTUAL ALLEGATIONS

10.     Plaintiff Idalmy Pichardo was born in Esperanza, Santo Domingo, Dominican Republic.

11.     In 2009, Ms. Pichardo was living in Santo Domingo with her three children and attending college.  In July of that year, she met Defendant Francisco, a native of Santo Domingo, Dominican Republic, who lived in the United States.

12.     Defendant Francisco was known to own businesses in the United States and had a favorable reputation in Santo Domingo.

13.     Mutual friends introduced Ms. Pichardo to Defendant Francisco when he was visiting Santo Domingo from the United States.  During the next week, Ms. Pichardo and Defendant Francisco spoke daily.  At the end of the week, Defendant Francisco returned to the United States.

14.     After his return to the United States, Defendant Francisco remained in constant contact with Ms. Pichardo and began providing her money to assist with daily living expenses.

15.     The next month, August 2009, Defendant Francisco returned to the Dominican Republic for another week-long trip and again spent time with Ms. Pichardo.

16.     In October 2009, Defendant Francisco again returned to the Dominican Republic.  During his stay, he rented an apartment for Ms. Pichardo and asked her to marry him.  Ms. Pichardo believed that Defendant Francisco truly cared for her, and accepted his marriage proposal.

17.     Defendant Francisco told Ms. Pichardo that he wanted her to move with him to the United States so they could begin their life together.  He told her that he would arrange for her to receive a visa and that upon her arrival in the United States they would wed.  Defendant Francisco promised that he would also arrange for Ms. Pichardo's aunt to accompany her to the United States and for Ms. Pichardo's children to move to the United States at a later date.

18.     Defendant Francisco represented to Ms. Pichardo that once she moved to the United States, she would work as a secretary for Defendant Francisco's business and would be

4

paid a weekly salary of $300.

19.     In December 2009, Defendant Francisco returned to the Dominican Republic purportedly to assist Ms. Pichardo in obtaining immigration documents necessary for travel to the United States.  They visited an attorney known to Defendant Francisco, who reported that due to the disparity in their ages, immigration officials would never believe that they were truly married.

20.     Defendant Francisco then informed Ms. Pichardo that he knew a man in the consulate office who could assist them in obtaining the proper visa.

21.     A few days later, a man purportedly from the consulate office came to Ms. Pichardo's house.  He met with Mr. Francisco, and then showed Ms. Pichardo her passport and United States visa, and told her both documents would be waiting for her at the airport.

22.     On January 28, 2010, Ms. Pichardo, her aunt, and Defendant Francisco went to the airport in Santo Domingo, from where Ms. Pichardo believed they were to travel to New York.  Upon arrival, Defendant Francisco told Ms. Pichardo that their flight was cancelled and that he would be travelling ahead to New York without her.  He told her that she and her aunt would follow him on a different flight in a few days.

23.     On January 30, 2010, the same man who had visited Ms. Pichardo's house previously representing that he worked at the consulate office, picked up Ms. Pichardo and her aunt at her house and drove them to the airport.  He boarded the plane with Ms. Pichardo and her aunt.

24.     Although Ms. Pichardo believed they were flying directly to New York, the plane landed in Panama.  When she asked about the intermediary landing, the man she believed to be a consular official informed her that it was a regularly scheduled stop, and that they would soon be in New York.  Instead of arriving in New York, Ms. Pichardo's plane next landed in Guatemala.

25.     Upon arrival in Guatemala, the man Ms. Pichardo believed to be a consular

5

official took Ms. Pichardo's passport and all other identifying documents from her.  The man also delivered her to a woman named Lidia, who over the next few days transported Ms. Pichardo from Guatemala to Mexico, traveling on foot and in cars.

26.     Once Ms. Pichardo realized she was in Guatemala, she told Lidia she no longer wanted to continue traveling and wished to return to the Dominican Republic.  Lidia told her that Defendant Francisco had already paid for her transfer, and that Lidia was responsible for making sure Ms. Pichardo was delivered to the United States.

27.     Ms. Pichardo's journey was extremely difficult.  She was not provided with any food or water, and was exhausted from the continuous forced movement.

28.     When Ms. Pichardo arrived in Mexico she was delivered to the house of a woman named Sonia.  After approximately one week, the man Ms. Pichardo believed to be from the consulate arrived and took her to another house in Mexico, where they remained for approximately three days.  She was then taken across the border from Mexico to the United States.

29.     During the trip from Mexico to the United States, Ms. Pichardo was forced to walk across the desert without food or water.

30.     Once Ms. Pichardo arrived in San Antonio, Texas, she was taken to a house and kept captive.  She was forced to sleep on the floor, and was refused food and water.  Ms. Pichardo was held in San Antonio for approximately three days.

31.     On approximately February 20, 2010, two individuals drove Ms. Pichardo and her aunt from Texas to New York City in a white van.  Again, Ms. Pichardo was not provided with any food or water during this trip.

32.     Ms. Pichardo arrived in New York City on February 22, 2010.  By then, Ms. Pichardo had been forced to travel for approximately three weeks, often without food or water.

33.     Once Ms. Pichardo and her aunt finally arrived in New York, they were delivered

to Defendant Francisco in Manhattan. Defendant Francisco stated that he did not want Ms. Pichardo's aunt, and she was taken elsewhere by the traffickers while Ms. Pichardo was left with Defendant Francisco.

34.     At the time of her arrival, Ms. Pichardo required medical treatment for dehydration resulting from the lack of food and water during her three-week journey.

35.     Ms. Pichardo later learned that during Ms. Pichardo's three-week ordeal, Defendant Francisco contacted Ms. Pichardo's family and demanded "repayment" for the money he allegedly spent in transporting Ms. Pichardo and her aunt to the United States. Defendant Francisco demanded $30,000:  $15,000 each for Ms. Pichardo and her aunt. He told Ms. Pichardo's family that they must send this money to assure that Ms. Pichardo would arrive in New York safely.

36.     The day after Ms. Pichardo arrived in New York, Defendant Francisco took Ms. Pichardo to his parking garage, Defendant Expressway Parking, where she was forced to work long hours for the next several months without pay.

37.     Expressway Parking is a parking garage business located at 930 Faile Street in Bronx, New York. Based upon representations Defendant Francisco made while she was still living in the Dominican Republic, Ms. Pichardo believed she would be working as a secretary for this business and paid a weekly salary of $300.

38.     When Ms. Pichardo began working at Defendant Expressway Parking, her primary duty was to take parking tickets and receive payments from customers while manning the booth at the exit of the garage. In addition to working at the booth, Ms. Pichardo moved vehicles for customers, washed vehicles, and walked around the garage to check vehicles for expired parking tickets, inspect vehicles for any damage, and provide security.

39.     Ms. Pichardo's routine at Defendant Expressway Parking remained the same for the duration of her employment. She worked seven days a week, typically arriving at 6:00 a.m. and working until between 6:00 p.m. and 9:00 p.m., without a break, except on Sundays when

she would begin working an hour earlier at 5:00 a.m.

40.     Ms. Pichardo was not permitted to leave Defendant Expressway Parking unless accompanied by Defendant Francisco and was therefore often required to remain at the parking garage after the time her shift was supposed to end to await his return.

41.     Neither Defendant Francisco nor Defendant Expressway Parking ever paid Ms. Pichardo for any of the work she performed at the parking garage.

42.     Defendant Francisco repeatedly admonished Ms. Pichardo that she owed him money for transporting her to the United States and that she was paying off that debt by working at the parking garage.

43.     During the time that Ms. Pichardo was forced to work for Defendants Francisco and Expressway Parking, she was also forced to live with Defendant Francisco.  Defendant Francisco regularly physically abused Ms. Pichardo.  Defendant Francisco pushed Ms. Pichardo against walls, spit on her, punched her, and threatened to cut her.  Defendant Francisco repeatedly threatened to kill Ms. Pichardo and her three children in the Dominican Republic.

44.     Defendant Francisco also controlled Ms. Pichardo's access to food, and often refused to provide her with food and ordered others to refrain from giving her food.

45.     Defendant Francisco also threatened to call the police to report that Ms. Pichardo was "illegal."

46.     Because of Defendant Francisco's physical abuse, threats of deportation, and threats to her children in the Dominican Republic, Ms. Pichardo feared that she had to continue working for and living with Defendant Francisco until her debt was paid off.

47.     Upon information and belief, Defendant Francisco was in possession of Ms. Pichardo's passport and identification card issued by the government of the Dominican Republic from the time of her arrival in New York.  Defendant Francisco never returned Ms. Pichardo's passport and identification card to her.

48.     Ms. Pichardo continued working at Expressway Parking until on or around July 29, 2010, when she escaped with the help of a neighbor who offered her a place to stay.

8

V.     CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

**Trafficking Victims Protection Reauthorization Act, Peonage,**
**18 U.S.C. §§ 1581, 1595**
(Against Defendant Francisco)

49.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

50.     The peonage provision of the TVPRA, 18 U.S.C. Section 1581, establishes: "(a) Whoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage, shall be fined under this title or imprisoned not more than 20 years, or both."

51.     Defendant Francisco intentionally held Ms. Pichardo against her will and obtained her labor and services through threats and intimidation.

52.     Defendant Francisco intentionally caused Ms. Pichardo to be transported to the United States.  After Ms. Pichardo arrived in the United States, Defendant Francisco repeatedly told her that she owed him money for her travel, and that he had every intention of having that debt repaid.

53.     Defendant Francisco forced Ms. Pichardo to provide labor and services, under threats to herself and her family members, in order to repay that debt.

54.     Defendant Francisco's conduct constituted holding and/or returning Ms. Pichardo to a condition of peonage.

55.     As a result of Defendant Francisco's conduct, Ms. Pichardo has suffered damages in an amount to be determined at trial.

56.     Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1581, Ms. Pichardo is entitled to recover damages, including punitive damages, and reasonable attorneys' fees for Defendant Francisco's wrongful conduct.

## SECOND CLAIM FOR RELIEF

**Trafficking Victims Protection Reauthorization Act, Sale into Involuntary Servitude,**
**18 U.S.C. §§ 1584, 1595**
(Against Defendant Francisco)

57.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

58.     The sale into involuntary servitude provision of the TVPRA, 18 U.S.C. Section 1584, establishes:  "Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held, shall be fined under this title or imprisoned not more than 20 years, or both."

59.     22 U.S.C. 7102(5) establishes that: "The term 'involuntary servitude' includes a condition of servitude induced by means of (A) any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or (B) the abuse or threatened abuse of the legal process."

60.     Defendant Francisco knowingly and willfully held Ms. Pichardo in a condition of involuntary servitude and had her brought to the United States for the purpose of holding her in such condition.

61.     Defendant Francisco knowingly obtained Ms. Pichardo's labor and services through threats and intimidation.

62.     Defendant Francisco used threats and intimidation to force Ms. Pichardo to work without paying her the compensation required by law, including physical abuse, threats against Ms. Pichardo's life and the lives of her three children, and threats to report Ms. Pichardo to the legal authorities causing her to fear that she would be arrested, or detained, by law enforcement authorities.

63.     As a result of Defendant Francisco's conduct, Ms. Pichardo has suffered damages

in an amount to be determined at trial.

64.     Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1584, Ms. Pichardo is entitled to recover damages, including punitive damages, and reasonable attorneys' fees for Defendant Francisco's wrongful conduct.

### THIRD CLAIM FOR RELIEF

**Trafficking Victims Protection Reauthorization Act, Forced Labor,
18 U.S.C. §§ 1589, 1595**
(Against Defendant Francisco)

65.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

66.     The forced labor provision of the TVPRA, 18 U.S.C. Section 1589, establishes: "(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d)."

67.     Defendant Francisco knowingly obtained Ms. Pichardo's labor and services through force, threats, physical restraint, and intimidation, including physical abuse, threats against Ms. Pichardo's life and the lives of her three children, confining Ms. Pichardo to Mr. Francisco's apartment and parking lot, and threats to report Ms. Pichardo to the legal authorities causing her to fear that she would be arrested, or detained, by law enforcement authorities.

68.     Defendant Francisco repeatedly caused Ms. Pichardo physical and nonphysical harm, compelling her to perform labor or services in order to avoid incurring that harm.

69.     Defendant Francisco developed and participated in a scheme, which included, but

11

is not limited to, confiscating and keeping Ms. Pichardo's passport and government issued identification, and intending to cause Ms. Pichardo to believe that if she did not perform the labor or services, she would suffer serious harm.

70.    Defendant Francisco used threats and intimidation to hold Ms. Pichardo in captivity and force her to work without paying her the compensation required by law.

71.    As a result of Defendant Francisco's conduct, Ms. Pichardo has suffered damages in an amount to be determined at trial.

72.    Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1589, Ms. Pichardo is entitled to recover damages, including punitive damages, and reasonable attorneys' fees for Defendant Francisco's wrongful conduct.

## FOURTH CLAIM FOR RELIEF

### Trafficking Victims Protection Reauthorization Act
### Trafficking Into Servitude, 18 U.S.C. §§ 1590, 1595
(Against Defendant Francisco)

73.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

74.    The trafficking into servitude provision of the TVPRA, 18 U.S.C. Section 1590, provides:  recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violation of laws prohibiting peonage, slavery, involuntary servitude, or forced labor shall subject defendant to fines.

75.    As set forth herein, Defendant Francisco knowingly recruited, harbored, transported, provided, and obtained Ms. Pichardo to provide labor and services to the Defendants in violation of laws prohibiting peonage, slavery, involuntary servitude, and forced labor.

76.    As a result of Defendant Francisco's conduct, Ms. Pichardo has suffered damages in an amount to be determined at trial.

77.    Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1590, Ms. Pichardo is entitled to recover damages, including

punitive damages, and reasonable attorneys' fees for Defendant Francisco's wrongful conduct.

**FIFTH CLAIM FOR RELIEF**

**Trafficking Victims Protection Reauthorization Act**
**Unlawful conduct with respect to documents in furtherance of trafficking, peonage,**
**slavery, involuntary servitude, or forced labor, 18 U.S.C. §§ 1592, 1595**
(Against Defendant Francisco)

78.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

79.     The unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor provision of the TVPRA, 18 U.S.C. Section 1592, provides: "Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport . . . of another person—

> (1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594 (a);
>
> (2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or
>
> (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000, shall be fined under this title or imprisoned for not more than 5 years, or both.

80.     Defendant Francisco knowingly possessed and concealed Ms. Pichardo's passport and government issued identification in the course of violating of 18 U.S.C. §§ 1581, 1584, 1589, 1590, and 1591.

13

81.     Defendant Francisco knowingly possessed and concealed Ms. Pichardo's passport and government issued identification with the intent of violating of 18 U.S.C. §§ 1581, 1584, 1589, 1590, and 1591.

82.     Defendant Francisco knowingly recruited, harbored, transported, provided, and obtained Ms. Pichardo to provide labor and services to the Defendants in violation of laws prohibiting slavery, peonage, involuntary servitude, and forced labor.

83.     Defendant Francisco possessed and concealed Ms. Pichardo's passport and government issued identification to restrict Ms. Pichardo's ability to travel in order to force her to provide labor and services.

84.     As a result of Defendant Francisco's conduct, Ms. Pichardo is a victim of a severe form of trafficking in persons and has suffered damages in an amount to be determined at trial.

85.     Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1592, Ms. Pichardo is entitled to recover damages, including punitive damages, and reasonable attorneys' fees for Defendant Francisco's wrongful conduct.

## SIXTH CLAIM FOR RELIEF

**Trafficking Victims Protection Reauthorization Act**
**Unlawful conduct with respect to immigration documents, 18 U.S.C. §§ 1597, 1595**
(Against Defendant Francisco)

86.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

87.     The unlawful conduct with respect to immigration documents provision of the TVPRA, 18 U.S.C. Section 1597, provides: "It shall be unlawful for any person to knowingly destroy, conceal, remove, confiscate, or possess, an actual or purported passport or other immigration document of another individual . . . (3) in order to, without lawful authority, maintain, prevent, or restrict the labor or services of the individual."

88.     Defendant Francisco knowingly possessed and concealed Ms. Pichardo's passport

and government issued identification.

89.     Defendant Francisco had no lawful authority to possess or conceal Ms. Pichardo's passport and government issued identification.

90.     Defendant Francisco possessed and concealed Ms. Pichardo's passport and government issued identification in order to maintain her labor and services for Defendants, and to prevent or restrict her from providing labor or services to anyone else.

91.     As a result of Defendant Francisco's conduct, Ms. Pichardo has suffered damages in an amount to be determined at trial.

92.     Pursuant to 18 U.S.C. Section 1595(a), which provides for recovery of civil damages for violations of Section 1597, Ms. Pichardo is entitled to recover damages, including punitive damages, and reasonable attorneys' fees for Defendant Francisco's wrongful conduct.

### SEVENTH CLAIM FOR RELIEF

**New York Labor Law**
**Minimum wage and overtime compensation, 12 N.Y.C.R.R. § 142-2**
(Against All Defendants)

93.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

94.     12 N.Y.C.R.R. § 142-2.1(b) provides that "the minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee."

95.     The minimum wage per hour on and after July 24, 2009 is $7.25 pursuant to 12 N.Y.C.R.R. § 142-2.1(a).

96.     12 N.Y.C.R.R. § 142-2.2 provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."

97.     Ms. Pichardo was employed by Defendants from February 23, 2010 until on or around July 29, 2010.

98.     Defendants did not pay Ms. Pichardo the required minimum hourly wage or compensate her for overtime work.

99.     Defendants' failure to pay Ms. Pichardo the minimum wage and overtime violated the NYLL.

100.    Due to Defendants' NYLL violations, Ms. Pichardo is entitled to recover the amount of her unpaid minimum wages and overtime pay, and attorneys' fees and costs, pursuant to NYLL §198(1-a).

101.    In addition, Defendants' failure to pay Ms. Pichardo the minimum wage and overtime was willful.  Therefore, Ms. Pichardo is also entitled to recover liquidated damages, including interest thereon, pursuant to NYLL §198(1-a).

## EIGHTH CLAIM FOR RELIEF

### New York Labor Law
### Spread of Hours Pay, 12 N.Y.C.R.R. § 142-2.4
(Against All Defendants)

102.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

103.    Defendants regularly and knowingly required Ms. Pichardo to be at work in excess of ten hours per day.

104.    Defendants failed to pay Ms. Pichardo one extra hour's pay at minimum wage for every day in which the interval between the beginning and end of Ms. Pichardo's work day exceeded ten hours, in violation of N.Y.C.R.R. § 142-2.4.

105.    Due to Defendants' NYLL violations, Ms. Pichardo is entitled to recover the amount of her unpaid spread of hours pay and attorneys' fees and costs, pursuant to NYLL §198(1-a).

106.    In addition, Defendants' violation of N.Y.C.R.R. § 142-2.4 was willful. Therefore, Ms. Pichardo is also entitled to recover liquidated damages, including interest thereon, pursuant to NYLL §198(1-a).

16

## NINTH CLAIM FOR RELIEF

### New York Labor Law
### Frequency of Payments, New York Labor Law § 191(1)(a)(i)
(Against All Defendants)

107.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

108.    Article 6 of NYLL § 191(1)(a)(i) provides that "[e]very employer shall pay wages in accordance with the following provisions: (i) A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."

109.    Ms. Pichardo did not receive payment of wages for hours worked within seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191(1)(a)(i).

110.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants an amount to be determined at trial, plus pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action.

## TENTH CLAIM FOR RELIEF

### New York Labor Law
### Notice and Record-Keeping, New York Labor Law § 195
(Against All Defendants)

111.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

112.    Article 6 of NYLL § 195 (1)(a) provides that "every employer shall: (a) provide his or her employees . . . at the time of hiring . . . a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day . . . ; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone

number of the employer; plus such other information as the commissioner deems material and necessary."

113.    Article 6 of NYLL  § 195(3) provides that every employer shall "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

114.    Ms. Pichardo did not receive any such notices or statements, in violation of NYLL § 195.

115.    Due to Defendants'  NYLL violations, Plaintiff is entitled to recover from Defendants fifty dollars for each work week that she did not receive the notice required by NYLL§ 195 (1)(a) and one hundred dollars for each work week that she did not receive the notice required by NYLL§ 195 (3), together with costs and reasonable attorneys' fees.

### ELEVENTH CLAIM FOR RELIEF

**Fraudulent Misrepresentation**
(Against Defendant Francisco)

116.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

117.    Prior to Ms. Pichardo's arrival in the United States, Defendant Francisco represented to her that once she immigrated to the United States he would marry her, arrange for her children to be brought to the United States, and she would be employed as a secretary in Defendant Francisco's business earning a weekly salary of $300.  Contrary to that false representation, upon her arrival in the United States Defendant Francisco forced Ms. Pichardo into slavery.  Defendant Francisco never fulfilled his promise of marriage and never arranged for Ms. Pichardo's children to be brought to the United States.  Instead, Defendant Francisco forced

Ms. Pichardo to work as an employee at Defendant Expressway Parking for approximately twelve hours a day, seven days a week without pay.

118.     While in the Dominican Republic, Defendant Francisco also informed Ms. Pichardo that he would be arranging for her travel to the United States via airplane.  Instead, on January 28, 2010, upon the arrival of Ms. Pichardo and her aunt at the airport in Santo Domingo for their trip to New York, Defendant Francisco told Ms. Pichardo that her flight was cancelled, that he would go ahead to New York and that Ms. Pichardo and her aunt would follow in a few days.  Ms. Pichardo and her aunt left the Dominican Republic a few days later.

119.     Over the next twenty-two days, individuals in a human trafficking network transported Ms. Pichardo from the Dominican Republic to New York, often times traveling on foot and in cars.  Defendant Francisco facilitated Ms. Pichardo's transport and provided the fees necessary to pay the individuals responsible for transporting her and her aunt.

120.     From the beginning, Defendant Francisco never intended to marry Ms. Pichardo, send for Ms. Pichardo's children, or provide employment to Ms. Pichardo as a secretary, but rather intended to subject her to trafficking, peonage, slavery, involuntary servitude, and forced labor in violation of federal, state, and common law.  That intention is evident through Defendant Francisco's reliance on and cooperation with a human trafficking network to transport Ms. Pichardo to New York.

121.     Ms. Pichardo justifiably relied on Defendant Francisco's misrepresentations in deciding to leave her life and family in the Dominican Republic and immigrate to the United States.

122.     Ms. Pichardo's justifiable reliance on Defendant Francisco's false representations caused injury to her, including, among others, lost wages and overtime compensation.

123.     Defendant Francisco committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights,

entitling Plaintiff to recover punitive damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

### Unjust Enrichment
(Against All Defendants)

124.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

125.    Defendant Expressway Parking and Defendant Francisco were unjustly enriched because Ms. Pichardo worked for Defendants without compensation.

126.    Defendant Francisco falsely represented to Ms. Pichardo that she would be earning a weekly salary of $300 as a secretary in his business if she immigrated to the United States.

127.    Defendant Francisco never intended to provide employment to Ms. Pichardo as a secretary, but rather intended to subject her to trafficking, peonage, slavery, involuntary servitude, and forced labor in violation of federal, state and common law.

128.    Defendants received the benefit of Ms. Pichardo's unpaid labor though fraudulent and unconscionable conduct.

129.    Equity and good conscience require that Ms. Pichardo receive restitution.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment or issue an order against Defendants, and each of them, as follows:

1.    General, compensatory and special damages in an amount to be proven at trial;

2.    Unpaid wages, including minimum wages and overtime premiums, in an amount to be proven at trial;

3.    Statutory penalties and liquidated damages in an amount to be proven at trial;

4.    Punitive and exemplary damages in an amount to be proven at trial;

5.   Liquidated damages pursuant to NYLL § 198;

6.   Pre- and post-judgment interest;

7.   Reasonable attorney's fees and costs; and

8.   Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 20, 2013

                                    Respectfully submitted,

                                    By: _____
                                        Sarah E. Walcavich
                                        Toi M. Frederick
                                        Orrick, Herrington & Sutcliffe LLP
                                        51 West 52nd Street
                                        New York, New York  10019-6142
                                        Telephone: 212-506-5000
                                        Facsimile:212-506-5151

                                        Dana Sussman
                                        Safe Horizon Anti-Trafficking Program
                                        50 Court St., New York 11201
                                        Telephone: (718) 943-8641
                                        Facsimile: (718) 943-8653

                                        *Attorneys for Plaintiff Idalmy Pichardo*